Findlay Refractories et al., Petitioners *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Glen E. Renz, Respondents.

Argued May 11, 1979, before Judges MENCER, ROGERS and CRAIG, sitting as a panel of three. Reargued June 3, 1980, before President Judge CRUMLISH and Judges MENCER, ROGERS, BLATT, CRAIG, MACPHAIL and WILLIAMS, JR. Judge WILKINSON, JR. did not participate.

*Raymond F. Keisling, Will & Keisling,* for petitioners.

*Robert H. Austine,* with him *Lawrence W. Dague, M. Scott Curran, Lawrence R. Zewe* and *Glen E. Renz,* for respondents.

OPINION BY JUDGE CRAIG, June 30, 1980:

This appeal, from a decision of the Workmen's Compensation Appeal Board (board) affirming a referee's award of total permanent disability compensation, raises issues of timeliness of claim and notice. After initial argument before a panel of this court, we ordered reargument before the court en banc.

Claimant, after fourteen years of work in the refractories industry, grinding tank blocks composed of varying percentages of silicate compounds, told his foreman on May 16, 1974 that he was breathing with difficulty. The next day was his last day of work. He testified that he had the breathing problem to a less severe extent during the year before he quit work.

Hospitalization ensued and claimant's treating physician, Dr. Pizzi, referred claimant to a lung specialist, Dr. Quetsch, who performed a biopsy.

Claimant testified that, sometime in June of 1974, "I was told that I did have silicosis, to get out of there, and not to go back to work." He also testified that his breathing has progressively worsened since his last day of work.

Claimant's recollection coincides with a letter dated June 17, 1974, in which his treating physician stated to his attorney that the lung specialist "feels" that claimant was suffering from silicosis but that further studies had been ordered and not yet com-

pleted, and that, in the interim, it was "felt" that claimant was unemployable because of silicosis.

On September 25, 1974, apparently based on this preliminary statement, claimant filed a petition under The Pennsylvania Occupational Disease Act (Disease Act)[1] claiming total disability due to silicosis.

A letter of December 2, 1974, by Dr. Wald, who examined claimant at the request of the Commonwealth and reviewed his medical record, stated that there was no evidence of significant pneumoconiosis at that time and that the patient's history was compatible with chronic bronchitis. A Dr. Anderson examined claimant at the request of the employer on April 9, 1975 and concluded, "There is an evidence of a pneumoconiotic disease process, however, the patient's pulmonary function studies are only minimally deranged and I do not feel that he is any more than 10% impaired from the respiratory standpoint."

On May 27, 1975, a department referee denied the claim, finding, among other things, that the medical evidence was not sufficient to establish silicosis and that claimant had chronic bronchitis.

The board thereafter issued an order setting aside those findings and remanding the case to the referee to make specific findings of fact concerning the dates of partial and total disability.

The employer's appeal from that order was eventually dismissed as interlocutory by the Washington County Court of Common Pleas on June 30, 1976.

In the interim, claimant was examined again on October 24, 1975, this time by Dr. Silverman. In a letter dated October 29, 1975, Dr. Silverman positively opined that claimant had silicosis, concluding that claimant was "obviously totally and permanently disabled."

---

[1] Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. §1201 et seq.

Claimant finally had the remand hearing, as ordered by the board, on November 14, 1977. At that hearing, when the referee asked if claimant wished to amend his original petition in order to proceed under The Pennsylvania Workmen's Compensation Act (Compensation Act),[2] claimant's attorney did so amend, over objections by opposing counsel.

After concluding that hearing, the referee made the following findings:

6. Based upon sufficient, competent and credible medical evidence of record in this case from Dr. J. D. Silverman, who examined claimant your Referee finds as a fact that on October 24, 1975, the claimant, Glenn E. Renz, became totally and permamently disabled from silicosis . . . in employment covered by the Pennsylvania Workmen's Compensation Act, as amended. . . .

7. Notice of claimant's disability was given to defendant on May 16, 1974 which was premature and which is considered proper notice in this case.

The employer, acknowledging that claimant is totally disabled, now raises no question as to the merits,

---

[2] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §1 et seq.

Although the benefits under the two statutes are different, victims of occupational diseases are now permitted, under Section 444 of the Compensation Act, added by Act of October 17, 1972, P.L. 930, 77 P.S. §1000, in a case such as this, to pursue compensation under either the Disease Act or the Compensation Act or in the alternative; and, the claimant is liberally allowed to amend a petition filed under one act to seek benefits under the other statute. See, Workmen's Compensation Appeal Board v. Wlodarczyk, 21 Pa. Commonwealth Ct. 495, 347 A.2d 763 (1975) ; 2 A. Barbieri, Pennsylvania Workmen's Compensation and Occupational Disease, §7.01 (2) (1975). An amendment properly made by a claimant is binding on the referee and board. Industrial Services Contracting, Inc. v. Wilson, 28 Pa. Commonwealth Ct. 83, 367 A.2d 377 (1977).

but seeks to avoid liability only on contentions that both claim filing and notice have been untimely.

## 1. *Timeliness of Claim*

The first contention is that compensation is barred under Section 315[3] of the Compensation Act because. amendment of the claim in November 1977, to proceed under that Act, was more than three years after the "injury", or knowledge of it, in June 1974.

Accepting the employer's argument that the tentative diagnosis of June 17, 1974, sufficiently informed the claimant of his disability, we conclude that the original filing of the claim less than ninety days thereafter, on September 25, 1974, was determinative, and that the later amendment did not launch a new proceeding. Very substantially, the original timely claim related to the very same disability for which the final compensation award was granted.

On this issue, it is appropriate that we now hold as Judge CRUMLISH noted in *City of Hazleton v. Workmen's Compensation Appeal Board* (although there not specifically so deciding):

---

[3] Section 315 of the Compensation Act, 77 P.S.. §602, reads in relevant part:

In cases of personal injury all claims for compensation shall be forever barred, unless, within three years after the injury, the parties shall have agreed upon the compensation payable under this article; or unless within three years after the injury, one of the parties shall have filed a petition as provided in article four hereof. . . . [I]n cases of injury resulting from ionizing radiation in which the nature of the injury or its relationship to the employment is not known to the employe, the time for filing a claim shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term 'injury' in this section means, in cases of occupational disease, disability resulting from occupational disease.

> [W]e believe that the statute of limitations would not apply to the amendment of a claim brought under the Occupational Disease Act to one under the Workmen's Compensation Act in *any* event, and hence would not bar the instant claim even if time had expired under the . . . [Workmen's Compensation Act limitations period as amended by the Act of December 5, 1974, P.L. 782, effective February 3, 1975, increasing the limitations period to three years]. In such a situation, the original filing is clearly sufficient to put the employer-defendant on notice as to the nature and circumstances of the claim, thereby fulfilling the purpose underlying the statute of limitations. (Emphasis in original.)

Citing *Horn v. Lehigh Valley Railroad Co.*, 274 Pa. 42, 117 A. 409 (1922). 35 Pa. Commonwealth Ct. 477, 483, n. 3, 386 A.2d 1067, 1070, n. 3.

That rationale is applicable here because the facts of the disability underlying this case and the proof necessary to sustain this claim are the same, whether the claim is considered under the Disease Act or the Compensation Act.

The purpose of the limitation period is not violated by allowing claimant's amendment, placing the claim under the Compensation Act, to relate back to the original filing under the Disease Act because the employer here has been defending the identical claim since that original filing.

No stale claim of doubtful validity has been unexpectedly thrust upon the employer. In the *Horn v. Lehigh Valley Railroad Co.* case, our Supreme Court said:

> The time limit in which claims might be filed was placed in the act not only to produce a uniform practice, but *to enable employers to know the period of time they could be called upon to*

*respond for just claims, so that they might not be constantly expecting stale claims of doubtful merit.* (Emphasis added.)

274 Pa. at 44, 117 A. at 410.

[Section 315] was not intended to cut out meritorious claims by harsh rulings as to the manner of filing.

274 Pa. at 45, 117 A. at 410.

To allow the amendment here is consistent with the general view that the Compensation Act must receive a liberal construction in which technicalities are not favorably viewed, *Rockwood Insurance Co. v. Workmen's Compensation Appeal Board,* 15 Pa. Commonwealth Ct. 499, 326 A.2d 665 (1974), *Allen v. Patterson-Emerson-Comstock, Inc.,* 180 Pa. Superior Ct. 286, 119 A.2d 832 (1956), and also with the approach that an overly technical construction should not be placed on the word "filed" as used in Section 315 of the Compensation Act. *Horn v. Lehigh Valley Railroad Co., supra; Laffey v. Philadelphia & Reading Coal & Iron Co.,* 125 Pa. Superior Ct. 9, 189 A. 509 (1937).[4]

As noted above, Section 444 of the Compensation Act, added by Act of October 17, 1972, P.L. 930, 77 P.S.

---

[4] A contrary result is not required by *Jones v. Philadelphia & Reading Coal & Iron Co.,* 154 Pa. Superior Ct. 465, 36 A.2d 252 (1944), which held barred by the one-year limitation of the Disease Act, a self-styled "amendment" to a timely-filed fatal claim petition under the Compensation Act. In that case, the original petition alleged death resulting from "powder wounds and hemorrhages" caused by an accident whereas the medical testimony before the referee revealed, in addition, a long history of work-related pulmonary disease of a pneumoconiotic character. The bar in that case was properly invoked because the claim under the Disease Act "was a new proceeding upon a new cause of action for *obviously evidence of death from occupational disease is different from the proof necessary to support a claim for death from accident."* 154 Pa. Superior Ct. at 469, 36 A.2d at 254. (Emphasis added.) *See also, Blackburn v. Pennsylvania Turnpike Commission,* 206 Pa. Superior Ct. 222, 213 A.2d 159 (1965).

§1000, plainly permits any claimant to pursue a claim under both acts, "in the alternative," a strong legislative indication of their interrelationship.

Accordingly, under our *Hazleton* view, the original timely claim provided the meaningful foundation for the award of compensation here.

Moreover, if we accept the referee's Finding No. 6, that claimant became totally disabled on October 24, 1975 (a finding not here questioned by the employer), then the amendment, even if treated as a new claim as of November 14, 1977, was nevertheless clearly in time, having been entered less than three years after that date of total disability.

As to that view, employer contends that, in order to recover as to such total disability, claimant was obliged to file a *partial* disability claim under the Compensation Act within three years after June of 1974, when, according to employer's present posture, "[t]here is no question ... that claimant was suffering a partial disability" (contrary to the employer's strenuous position of no occupational disability, only bronchitis, at that time).

However, the present claim at all times has been a claim for total, not partial, disability. If, as employer thus contends, the three-year period for filing a total disability claim were to be triggered by partial disability, an impossible result could arise because the onset of partial disability can easily occur more than three years before disability becomes total; as we recently noted in *Consolidation Coal Co. v. Workmen's Compensation Appeal Board,* in dealing with an argument that time limitations as to total disability claims should be triggered at the point of partial disability:

> ... [A]n interpretation which resulted in the claim filing period starting before the onset of total disability, in a case where more than three

years elapsed until the disability became total, would mean that the right to file the claim would expire before it accrued—an unthinkable consequence.

47 Pa. Commonwealth Ct. 64, 68, n. 1, 407 A.2d 134, 136-37, n. 1 (1979).

## 2. *Timeliness of Notice*

The employer has also raised a question as to the timeliness of the 120-day notice of claim required by Section 311 of the Compensation Act, 77 P.S. §631.

This contention, which expressly refers to "the examination of October 24, 1975" as the notice-triggering date,[5] ignores the fact that as of that date, and for nearly a year before that, the employer had been litigating the matter before the referee and the board, and therefore had to be very aware of the claim of disability all along.

Section 311 of the Compensation Act begins with the exception, *"Unless the employer shall have knowledge of the occurrence of the injury. . . ."* (Emphasis added.) The purpose of the notice requirement is to protect the employer from stale claims for injuries of which it had no knowledge, made after the time for a full and complete examination of the facts has passed. Therefore, actual knowledge of a compensable injury is sufficient. *Wilkinson v. United Parcel Service of Pennsylvania, Inc.*, 158 Pa. Superior Ct. 22, 43 A.2d 408 (1945).

As we noted in *Padilla v. Chain Bike Corp.*, 27 Pa. Commonwealth Ct. 190, 192 n. 3, 365 A.2d 903, 904 n. 3

---

[5] Employer's questioning of the generalized notice given by claimant to the employer May 16, 1974 (found to be notice by the referee's Finding No. 7) could not be directed to the matter of original notice of the claim because the claim filing on September 25, 1974 certainly sufficed as timely notice, within less than 120 days after the tentative diagnosis of June 17, 1974.

464

(1976) the procedural notice sections of the Compensation Act were amended in 1972 "to make knowledge rather than formal notice the criterion, [and] prior judicial construction had mandated a requirement equivalent to the knowledge standard sanctioned by the amendments." *See also, Canterna v. United States Steel Corp.*, 12 Pa. Commonwealth Ct. 579, 317 A.2d 355 (1974).

Moreover, Section 311 refers to knowledge of an "injury", *i.e.*, "disability resulting from occupational disease." Hence it is clear that reference to one Act or the other is immaterial as to notice; it is knowledge of the fact of injury which counts, and that fact was prominent in the litigation from the outset.

Therefore, the employer cannot demand that notice of claim be uselessly reiterated within 120 days after the medical confirmation in October of 1975.

The board's decision is affirmed.

JUDGE MENCER DISSENTS.

JUDGE MACPHAIL CONCURS IN THE RESULT ONLY.

ORDER

AND Now, this 30th day of June, 1980, the opinion and order of the Workmen's Compensation Appeal Board dated October 5, 1978, at No. A-74733 is hereby affirmed. Respondent Findlay Refractories, and its insurance carrier, Vigilant Insurance Company, is ordered to pay compensation to the claimant, Glen E. Renz, at the rate of $100.00 per week beginning October 24, 1975 and continuing within the limitation of the Act, such award against respondent to bear interest on all deferred payments of compensation at the rate of ten percentum per annum.

It is also ordered that respondent and its insurance carrier pay directly to Lawrence Zewe, claimant's attorney, twenty percent out of each weekly compensation check due claimant under this order, for a period

of two years from the commencement of payment of compensation, and to pay the balance directly to claimant, and after the expiration of said two-year period to make all compensation payments directly to claimant.

The employer and its insurance carrier are further directed to pay the costs of litigation specified in the referee's order in the above-captioned matter dated, February 9, 1978.